UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WINDY R. COSPER,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>               Defendant. | Case No. C11-5197-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Windy R. Cosper seeks review of the denial of her Supplemental Security Income application. She contends the ALJ improperly discounted her credibility and incorrectly evaluated the opinions of Michael Regrets, Ph. D., Lawrence Moore, Ph. D., Colin Joseph, Ph. D., and Amanda Ragonesi, Psy.D. Dkt. 16. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Cosper is currently 40 years old and has completed 8th grade special education; she has worked for very brief periods as a retail clerk, housekeeper, mail sorter, and construction flagger.[1] On November 16, 2006, she applied for benefits, alleging disability as of December 27,

---

[1] Tr. 40, 84, 119.

REPORT AND RECOMMENDATION - 1

1978. Tr. 84. Her application was denied initially and on reconsideration.[2] After conducting a hearing on July 7, 2009, the ALJ found Ms. Cosper not disabled.[3] As the Appeals Council denied Ms. Cosper's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[4] the ALJ made the following findings:

**Step one:** Ms. Cosper had not worked since November 14, 2006.

**Step two:** Ms. Cosper had the following severe impairments: major depressive disorder.

**Step three:** This impairment did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:** Ms. Cosper could perform a full range of work at all exertional levels. She could understand, remember, and follow short, simple instructions and perform routine tasks. She is limited to superficial interaction with the general public.

**Step four:** Ms. Cosper had no past relevant work.

**Step five:** As there are jobs Ms. Cosper can perform, she is not disabled.

Tr. 30-34.

**DISCUSSION**

**A.     The ALJ's credibility finding**

Where there is no evidence of malingering, as is the case here, an ALJ may reject the testimony of a claimant only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996). "General findings are

---

[2] Tr. 53, 58.
[3] Tr. 25-35.
[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Substantial evidence does not support the ALJ's finding that Ms. Cosper is not fully credible. At the hearing before the ALJ, Ms. Cosper was asked to explain why she could not work. Tr. 45. The ALJ discounted Ms. Cosper's credibility on the grounds she "did not know why she could not work." Tr. 32. The fact a glib answer did not roll off Ms. Cosper's tongue is not surprising and does not reflect a lack of credibility. Ms. Cosper has significant mental limitations. She is a special education student who never went past the 8th grade, cannot count money, and cannot manage her own finances. Tr. 43-44. Her limitations are revealed from the answers she gave to other questions during the hearing before the ALJ. For instance, she was asked: "This one doctor that Washington sent you to said – thought you were a highly passive and dependent individual. Do you know what I'm talking about?" Her answer was: "What's that mean?" *Id*. at 45. Given her mental limitations, it is thus unsurprising she could not answer a seemingly simple question, such as why she could not work, right off the bat. Additionally, Ms. Cosper eventually did answer the question. Immediately after she testified she did not know why she could not work, she was asked: "What do you think your problem is?" She stated "Well, I'm – have a lot of confusion." Tr. 45.

The ALJ next discounted Ms. Cosper's credibility finding her statement she was "dependent" on others was inconsistent with her claimed limitations. Tr. 32. Specifically, the ALJ found: Ms. Cosper "endorsed difficulty with activities of daily living" but told Dr. Ragonesi that she can perform self-care; Ms. Cosper claimed difficulties following cooking recipes but also said she can cook and grocery shop; Ms. Cosper said she can use public transportation, do household chores, have romantic relationships, attend church, and read and

write. Tr. 32. The record does not support the ALJ's findings. To begin, Ms. Cosper did not claim she was completely infirm and unable to perform any activities of daily living. Rather she claimed she could perform daily activities but with difficulty. The record is consistent with these claims. For example, in her adult function report, Ms. Cosper stated she could take care of her grooming needs but needed "constant reminders always don't take care very well." Tr. 110. She stated she could prepare meals "some of the time when needed" and that it takes her "3 minutes" to prepare meals. *Id.* She reported doing household chores but stated it took her all day to complete and that she needed "constant reminders." Additionally, Ms. Cosper's statements are consistent with the portions of Dr. Ragonesi's report upon which the ALJ relied in assessing Ms. Copser's credibility. Dr. Ragonesi reported:

> Ms. Cosper reported she lives in transitional housing. She denied any problems completing self-care tasks. She explained ongoing symptoms of depression interfere with her ability to complete household chores. She said she struggles with cooking meals that require preparation because she has difficulty following recipe directions. No problems grocery shopping were endorsed. She used the city bus for transportation and struggles with trip planning. She explained she has difficulty following through with appointments and managing her finances.
>
> . . .
>
> As noted, Ms. Cosper is living in housing managed through Columbia River Mental Health. She said on a typical day she wakes at about 6:30 a.m., takes her medication, drinks coffee and "sometimes eats cereal." She attends to her hygiene and put [sic] on clean clothes daily. She does her own laundry and her share of household chores. She does her own grocery shopping and is able to cook simple meals. She does not have a driver's license or bank account. She has been assigned a protective payee and said this is very helpful. She has no social contacts, except her sister and her roommate.

Tr. 310, 320.

The ALJ also discounted Ms. Cosper's credibility on the grounds her claimed limitations

REPORT AND RECOMMENDATION - 4

were inconsistent with her college attendance in 2006, 2008, and 2009 (Tr. 32) and her 2006 trip to Arizona to visit friends and family. Tr. 33-34. Ms. Cosper's medical records note "college" attendance but are too skimpy to provide any insight into Ms. Cosper's credibility or abilities. Her records do not indicate what college Ms. Cosper attended, what the classes she took, the number of classes she attended, or whether she actually completed or passed any of her classes. Moreover, there is some evidence Ms. Cosper's college attendance involved nothing more than a failed attempt to obtain a GED as Dr. Ragonesi reported Ms. Cosper "attempted to get her GED as and [sic] adult but was not able to pass the required tests." Tr. 310.

As with Ms. Cosper's college attendance, little is known about Ms. Cosper's 2006 trip to Arizona. It is known Ms. Cosper lived in Arizona for most of her adult life and that her brother and her adult children still reside there. Tr. 309. But as to what the 2006 trip entailed, who arranged it, and what Ms. Cosper actually did to undertake the trip, little is known. Without more, Ms. Cosper's one trip to a state that she is familiar with provides little insight into her abilities or credibility. Additionally, there is some indication the trip was ill conceived and not well planned; Ms. Cosper ended up calling her social worker in Washington that she was stranded in Arizona and needed money to buy a ticket to return to Washington. Tr. 208.

The ALJ also discounted Ms. Cosper's credibility because "the claimant told Dr. Ragonesi that she had been arrested '40 times in 38 years' which is inconsistent with the Columbia River Mental Health Services ("Columbia Mental Health") records indicating the claimant's legal history consists of includes drinking underage and assault IV at age 19." Tr. 32. A review of Ms. Cosper's records show her statements are not as inconsistent as the ALJ found. Dr. Ragonesi reported "Ms. Cosper stated she was arrested '40 times in 38 years' for multiple assaults, drug charges, and DUIs." Tr. 311. Dr. Moore's report is similar. It states "legal

REPORT AND RECOMMENDATION - 5

history is notable for more than 30 arrests although she reports she has never been to jail. When asked to describe the nature of her criminal history, she notes being arrested for 'disorderly conduct and stupid stuff'. She reports she has pled guilty to 'stupid things like domestic violence, disorderly conduct and being intoxicated in public.'" Tr. 223.

Columbia Mental Health's records are also similar. In January 2006 Columbia Mental Health's records noted "client states that one of her relationships contained extensive domestic violence"; "legal history includes drinking underage and Assault IV at 19 years of age. I hit a neighbor with something after he yelled at my son." Tr. 252. Later in December 2006, Columbia Mental Health records noted "Windy has had legal problems with fighting, disorderly conduct, alcohol & drugs, and was arrested at least 1 time per year since age 17." Tr. 247.

The records of all three providers thus consistently show Ms. Cosper has been arrested many times and that her criminal history revolve around the same type of conduct—fighting, domestic violence and intoxication. The records of Dr. Ragonesi and Dr. Moore indicate Ms. Cosper has had 20 to 30 contacts with the police. The January 2006 records of Columbia Mental Health do not tally the times the police contacted Ms. Cosper but do not indicate that police contact was infrequent or rare. The December 2006 Columbia Mental Health records indicate Ms. Cosper has been arrested every year since the age of 17. Hence, on this record, substantial evidence does not support the ALJ's finding that Ms. Cosper gave inconsistent information about her arrest history.

The Commissioner also argues the ALJ properly discounted Ms. Cosper's testimony as inconsistent with the medical evidence. Dkt. 17 at 6. As discussed below, the ALJ used this rationale to discount the opinions of examining doctors Lawrence Moore, Ph. D., Colin Joseph, Ph. D., and Amanda Ragonesi, Psy.D.; however, as the ALJ did not rely on this as a ground to

REPORT AND RECOMMENDATION - 6

discount Ms. Cosper's credibility, neither will the Court. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). In sum, the Court concludes that as the ALJ failed to give clear and convincing reasons supported by substantial evidence to discount Ms. Cosper's credibility, the ALJ erred.

**B.      The ALJ's evaluation of the medical opinions**

Ms. Cosper argues the ALJ erred in placing great weight on the opinions of non-examining doctor Michael Regrets, Ph.D., and discounting the opinions of examining doctors Lawrence Moore, Ph. D., Colin Joseph, Ph. D., and Amanda Ragonesi, Psy.D.

Normally, an ALJ should give more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An examining doctor's opinion may be rejected only for "clear and convincing reasons" where not contradicted by another doctor. *Id*. at 830–31. Where contradicted, an examining doctor's opinion may only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id*. at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the examining doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). An ALJ who offers a conclusion given after a mere listing of the evidence "seriatim" does not achieve the level of specificity required under case law. *Embrey*, 849 F.2d at 421.

Additionally, where the opinions of non-examining physicians are not supported by

independent clinical findings, the report of a non-examining physician cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148–49 (9th Cir. 2001).

*1.    Dr. Michael Regrets, Ph.D.*

The ALJ placed significant weight on the opinions of Dr. Regrets, a non-examining physician, on the grounds that his opinions were "consistent with the medical evidence of record, including specifically the treatment notes from the claimant's primary care physician and mental health providers." Tr. 31. The record does not support the ALJ's findings.

Dr. Regrets opined Ms. Cosper could perform "simple and some detailed tasks," "would be able to persist," and "has in the past been able to interact with a few coworkers and supervisors and has currently shown the ability to interact appropriately with doctors, their staff and family members." Tr. 280. He also opined Ms. Cosper's "deficits in social capability . . . would preclude her from working with the general public in anything other than superficially social roles." *Id.* Finally, he opined Ms. Cosper could adapt to the normal stresses of daily life, and had the ability to plan and carry out her day. *Id.*

This opinion is not supported by independent clinical findings or the reports of Ms. Cosper's treating physician, Dr. Zbigniew Grudzien, M.D., or the reports of Ms. Cosper's mental health provider, Columbia Mental Health. Dr. Grudzien saw Ms. Cosper five times between December 2005 and December 2006. One office visit was for a sore throat. Tr. 233-35. The other four visits were for depression and a variety of other health problems. Dr. Grudzien opined Ms. Cosper suffers from depression, anxiety and "neurotic depression." Tr. 226-34. There is no indication the doctor believed Ms. Cosper was exaggerating her symptoms or that she was not really suffering from depression. Dr. Grudzien's records contain virtually no information about

Ms. Cosper's mental health problems other than noting depression, sleep problems, and being exhausted. The records do not discuss a treatment plan for Ms. Cosper's depression or medications. There is no discussion about how Ms. Cosper's depression affects her functioning, daily living activities, pace and persistence abilities or abilities to get along with others or work with others, other than notations such as "eats one meal a day," "lives alone," "appears pleasant," "good attention to hygiene and body habitus." *See e.g*. 227, 230, 236.

Columbia Mental Health provided Ms. Cosper services between January and December 2006. Tr. 243-76. In January 2006 Columbia Mental Health began assisting Ms. Cosper with her housing problems. Tr. 273-76. Ms. Cosper was "struggling with her living arrangements" and "struggling with decision making, handling anger" and wanted treatment. Tr. 272. Ms. Cosper was described as being "tearful, shy, reserved, scared, angry and depressed." *Id.* It was also noted her "fund of information may be below normal. Poor judgment." *Id*.

Columbia Mental Health also assessed Ms. Cosper in January 2006. Ms. Cosper was diagnosed with "major depressive disorder, recurrent, moderate to severe." Tr. 250. The assessment noted Ms. Cosper has "panic attacks," that she gets "shaky," loses track of time and things, "can't think straight," "loses her thoughts very easily," and that her head hurts and she is forgetful. Tr. 251. The assessment reported "concentration and focus are impaired if client's anxiety level is high. ADL's have been impaired for days at a time when client is experiencing depression." *Id.* Ms. Cosper was assigned a GAF score of 40. Tr. 250.

On February 2, 2006, Columbia Mental Health reported Ms. Cosper "has developmental disability although the disability is hard to detect" and that she "is not med compliant, not reliable, needs guidance, and angered quickly." Tr. 270. She was described as not acting like a 34 year old. *Id.* The next day, Columbia Mental Health staff helped moved Ms. Cosper into

housing Columbia had arranged. Tr. 268. On February 6, 2006, Columbia Mental Health staff met with Ms. Cosper who was in a "panic" because she said she could not live with her roommate and needed to move out. Tr. 266. She was described as "agitated" and "confused." Tr. 265.

On December 18, 2006, Columbia Mental Health again assessed Ms. Cosper. Tr. 244-49. Ms. Cosper was assigned a GAF score of 30 and diagnosed with major depressive disorder, recurrent, severe, without psychotic features, chronic without full interepisode recovery." Tr. 244. The assessment reported Ms. Cosper had diminished interest in activities, hypersomnia, psychomotor agitation, psychomotor retardation, fatigue, feelings of worthlessness, diminished ability to think, concentrate, and make decisions, thoughts of death including suicidal ideation. Tr. 244-45. The assessment stated: "The disturbance has been present for many years and causes clinically significant distress and impairment in social, familial, emotional, cognitive, behavioral, legal, executive, educational and occupational functioning." Tr. 245.

In short, the medical records from Ms. Cosper's treating providers do not support Dr. Regret's opinion that Ms. Cosper can perform simple tasks with appropriate pace and persistence, has the ability to work appropriately with coworkers and supervisors, and can adapt to the normal stresses of daily life. Dr. Grudzien's records are too skimpy to provide a basis to render any opinions about Ms. Cosper's functional limitations and Columbia Mental Health's records paint a picture of an individual whose functional limitations are far greater than found by Dr. Regret. For example, Columbia Mental Health assigned Ms. Cosper GAF scores of 30 on one occasion and 40 on another. This is consistent with the GAF scores assigned by the examining doctors—scores which the ALJ rejected. Tr. 33. GAF scores are relevant and should be considered. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). GAF scores

between 41-50 indicate "serious symptoms or a serious impairment in social, occupational, or school functioning."[6] The ALJ can discount GAF scores where the ALJ gives specific, legitimate reasons such as findings of other physicians that contradict the scores. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the ALJ ignored the GAF scores assigned by Columbia Mental Health without comment even though the scores indicated serious impairment, and Columbia Mental Health's records showed Ms. Cosper had significant social, cognitive, and occupational limitations.

Because Dr. Regets' opinions are not consistent with the "treatment notes from the claimant's primary care physician and mental health providers" and not supported by other independent objective clinical findings, the ALJ erred in giving great weight to Dr. Regret's opinions, and relying on his opinions in rendering the disability determination.

   *2.     Lawrence Moore, Ph. D., Colin Joseph, Ph. D., and Amanda Ragonesi, Psy.D.*

The ALJ rejected the opinions of examining doctors Lawrence Moore, Colin Joseph and Amanda Ragonesi finding their opinions were inconsistent with the Columbia Mental Health's records, relied too heavily on Ms. Cosper's self-reports, and were inconsistent with Ms. Cosper's daily living activities and college attendance. Tr. 33.

The ALJ found "the claimant's primary care physicians and mental health therapist paint vastly different pictures than are portrayed by the evaluating physicians." Tr. 33. As discussed above, the record does not support this finding. Dr. Grudzien's records are too limited to draw any conclusion about Ms. Cosper's functional limitations and Columbia Mental Health's records indicate Ms. Cosper is far more limited than the ALJ found and are more in line with the

---

[6] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM IV").

opinions of the examining doctors.

The record also shows Ms. Cosper can engage in activities of daily living but her activities are very limited and performed with difficulty. For instance, the fact her meals are limited to pouring herself a bowl of cereal or take no more than 3 minutes to prepare evidences significant deficits, not minor limits to daily activities as the ALJ suggests. The record shows Ms. Cosper's work history is so minimal that the ALJ found she has no past relevant work history. Tr. 34. Ms. Cosper has never earned more than $1373.02 a year (Tr. 88) and testified the longest she has been able to hold a job before being fired was one month. Tr. 41-42. Ms. Cosper's work history thus does not provide substantial evidence that she can maintain the pace and persistence needed for gainful employment, or that she has the ability to work with other employees and supervisors, as Dr. Regrets opined.

The record shows some of Ms. Cosper's doctors noted she attended college. If there was evidence Ms. Cosper was attending Portland State University and taking and passing classes needed to obtain a four year degree, her college attendance would undercut the evaluating doctors' opinions and support the ALJ's conclusion that Ms. Cosper is less impaired than she claimed. But as noted above, there is nothing in the record indicating what Ms. Cosper's college attendance involved, or that Ms. Cosper has the ability to attend classes leading to a four year degree. Rather, the record shows, Ms. Cosper is a special education student who never went beyond the 8th grade, that she struggled with answering simple questions at the hearing before the ALJ, and that she cannot count change and needs a payee to take care of her money.

Accordingly, the Court concludes the ALJ erred by failing to provide clear and convincing reasons, or specific and legitimate reasons, that are supported by substantial evidence in the record to reject the opinions of the evaluating doctors.

**CONCLUSION**

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ, utilizing the five-step disability process as appropriate, should (1) reevaluate the medical evidence including the records and opinions of the evaluating doctors, and Ms. Cosper's treating physicians and providers; (2) develop the medical record as necessary; and (3) reevaluate the testimony and credibility of Ms. Cosper.

Objections, if any to this Report and Recommendation must be filed and served no later than **November 21, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 7th day of November, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge